IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>CARL VON GARRETT,<br><br>  Defendant. | 4:23CR00526 SEP-SPM<br>Judge Sarah E. Pitlyk |

**DEFENDANT'S MOTION IN LIMINE TO PRECLUDE
THE GOVERNMENT'S PROFFERED EXPERT WITNESSES**

Defendant, **Carl Von Garrett**, by and through his attorneys, **Christopher T. Grohman** and **Ryan J. Levitt**, pursuant to Rules 2 and 16 of the Federal Rules of Criminal Procedure, the Due Process and Effective Assistance of Counsel clauses of the Fifth and Sixth Amendments to the Constitution of the United States, as well as the other authority cited herein, respectfully moves this Court for an order precluding the government from eliciting expert testimony.

In support of this motion, Mr. Von Garrett, through counsel, submits the following:

**I.     Background**

1.     On October 4, 2023, Mr. Von Garrett was charged in three counts of a nine-count indictment with conspiracy to commit money laundering and money laundering in violation of 18 U.S.C. § 1956.

2.     Trial in this matter is currently scheduled to commence on May 12, 2025.

3.     On February 26, 2025, Mr. Von Garrett, through counsel, submitted a letter correspondence to the United States Attorneys' Office requesting, *inter alia*, all materials required pursuant to Fed. R. Crim. P. 16(a)(1)(G).

4.     The government filed its notice of intent to present expert testimony on April 15, 2025. Dkt. # 244. That notice disclosed, first, that the government intended to call DEA Group

Supervisor Troey Stout pursuant to Rule 702 of the Federal Rules of Evidence. It further stated that the government intended to call an unspecified DEA Chemist, and some of the law enforcement agents who worked on this investigation to testify as expert witnesses.

5. As will be explained further herein, the government should be precluded from calling any of these witnesses based upon its noncompliance with the Court's pretrial disclosure orders and Rule 16 of the Federal Rules of Criminal Procedure.

**II.  Discussion**

  **A. Legal Standard**

6. As amended in 2000 in response to the Supreme Court's landmark decision, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S, 579 (1993), Rule 702 of the Federal Rules of Evidence sets forth the standard for admission of expert opinion testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

7. As this Court knows, the trial judge is charged with the gatekeeping responsibility to keep out unreliable expert testimony. *See* Fed. R. Evid. 702 advisory committee's notes to 2000 amendments; *see also Kumbo Tire Co. v. Carmichael*, 526 U.S. 137, 147-149 (1999). In fact, reliability is the "overarching" requirement of Rule 702. *Id.*

8. Rule 702 applies equally to scientific testimony and other types of expert testimony based on technical or specialized knowledge. *Kumho Tire Co., LTD. V. Carmichael*, 526 U.S. 137, 147-49 (1999). In exercising its gatekeeping function, trial courts should exclude expert testimony when

2

there is "too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Nor may an expert be permitted to testify when the facts upon which his opinion rest "plainly contradict" undisputed evidence. *United States v. Lang*, 2017 WL 4924680, *9 (6th Cir. 2017) (citing *Greenwell v. Boatwright*, 184 F.3d 492, 497-98 (6th Cir. 1999)). "Expert opinions are worthless without data and reasons." *Kenosha Liquor Co. v. Heublein, Inc.*, 895 F.2d 418, 420 (7th Cir. 1990). One district court has described the inquiry as whether or not the expert considered enough information to make the opinion reliable. *United States v. Scott*, 2013 WL 252247, *4 (S.D. Ind. 2013). And as another has noted, the "sufficient facts or data" requirement of 702(b) requires an expert to "take into account all of those facts which are necessary to support his findings, not just some of them, and he cannot conveniently disregard contrary evidence." *Holzmueller v. Ill. High School. Assoc.*, 2017 WL 2907840, *4 (N.D. Ill. 2017). For example, where an expert intends to testify about a business's gross average sales price but only reviewed a single customer sale, that opinion lacks sufficient facts and must be excluded. *See Stollings v. Ryobi Tech., Inc.*, 725 F.3d 753, 765 (7th Cir. 2013). So too for an officer's testimony as an expert on the link between drug activities and firearms where the officer had only made a handful of prior arrests during his career. *See United States v. Williams*, 212 F.3d 1305, 1209-10 (D.C. Cir. 2000).

9. When an expert bases his testimony on experience rather than science, "'the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *United States v. Nacchio*, 555 F.3d 1234, 1244 (10th Cir. 2009) (en banc) (quoting Fed. R. Evid. 702 2000 advisory committee notes). The expert must base his or her opinion on "facts which enable [the expert] to express a reasonably accurate conclusion as opposed to conjecture or speculation." *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995) (internal quotation marks omitted). "The trial court's gatekeeping function requires more than simply 'taking the expert's word for it" or accepting

3

the expert's "*ipse dixit*." *Nacchio*, 555 F.3d at 1258. Rather, the court must "scrutinize the proffered expert's reasoning to determine if that reasoning is sound." *Abraham v. WPX Prod. Prods., LLC*, 184 F. Supp. 3d 1150, 1186 (D.N.M. 2016).

> **B. The Government Failed to Comply with the Requirements of Fed. R. Crim. P. 16(a)(1)(G).**

10. Rule 16(a)(1)(G) of the Federal Rules of Criminal procedure provides that, upon request, the defense is entitled to a written summary of the testimony of any expert witness that the government intends to use during its case-in-chief along with the witness's qualifications, opinions, and the bases underlying the opinions. *See generally United States v. Jackson*, 51 F.3d 646, 651 (7th Cir. 1995) (strongly encouraging the government to offer more specific descriptions of the opinions of the witnesses, foundations for their testimony, and their qualifications because the government's summary barely satisfied Rule 16). The 1993 Advisory Committee Notes indicate that this rule "is intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony though focused cross-examination."

11. Precluding a party's expert from testifying is an appropriate remedy for failing to comply with Rule 16's obligations. *See United States v. Ulbricht*, 858 F.3d 71, 115 (2d Cir. 2017) (finding disclosure inadequate where it "merely listed general and in some cases extremely broad topics on which the expert might opine"), *abrogated on other grounds, United States v. Chambers*, 751 Fed. Appx. 44, 46 (2d Cir. 2018). Such a measure is appropriate where, for example, the disclosure simply list "general" or "broad" topics on which the expert might opine. *Id.* So too where the disclosure does not "summarize the experts' opinions about those topics, let alone the bases for the expert's opinions." *Id.* Likewise, barring such testimony is an appropriate remedy where the disclosed summary is "vague" or does not allow the opposing party to conduct meaningful cross-examination of the expert. *See United States v. Day*, 524 F.3d 1361, 1370 (D.C. Cir. 2008).

4

### i. DEA Group Supervisor Troey Stout

12. The government's disclosure notice stated that Special Agent Stout has more than 20 years' experience and is the Group Supervisor for DEA's Financial Investigations Group. It stated that Special Agent Stout has testified in federal court on dozens of occasions, and has been previously qualified as an expert.

13. The government attached a separate disclosure that more fully described Special Agent Stout's prior experience. It indicated that his opinions were based on his "training and experience in drug trafficking and money laundering investigations." In terms of his actual opinions, the government disclosed the following:

- Narcotics are typically imported into the United States from Mexico. Mexico is by far the largest supplier of illegal narcotics to the United States. Narcotic sales are usually cash sales. The sale of narcotics generates large amounts of money.
- Individuals involved in the distribution of controlled substances often have agreements to provide controlled substances on consignment, that is, the supplier will provide the drugs without demanding payment simultaneously. When drug organizations or individual drug distributors do so, it's typically referred to as "fronting" drugs.
- Drug trafficking organizations sell their own drugs, but money laundering organizations, including brokers operating internationally, may collect and return drug proceeds minus their profit to pay for drugs with payments often going to drug organizations in Mexico or other foreign countries.
- It often takes time for a drug trafficker or drug trafficking organization to collect drug proceeds for delivery back to the source of supply as money from the sale of drugs often has to be collected from a large number of individuals.
- Large drug trafficking and money laundering organizations are highly organized and include individuals who have different roles. On the money side, brokers arrange for repatriation of drug proceeds to source countries, such as Mexico. The money side of the organization includes a vast network of individuals engaged in money laundering activity, including those who utilize otherwise legitimate businesses to launder drug proceeds for the organizations, all the way down to couriers who pick up bulk cash and transport it to others along the chain.
- Leaders and managers of drug trafficking and/or money laundering organizations try to distance themselves from the drugs and/or money as much as possible, utilizing others to handle the drugs and/or money to avoid law enforcement detection.
- The individuals involved in laundering drug proceeds operate with as much secrecy as possible to conceal the nature and source of the money, using codes such as the serial numbers on a one dollar bill for identification, transporting the money in

5

- inconspicuous containers, engaging in countersurveillance techniques, and setting up pickups at inconspicuous locations to avoid law enforcement detection.
- Money launderers often utilize others to transport the money in order to limit their exposure and avoid detection by law enforcement.
- Drug traffickers and money launderers will often utilize multiple cellular telephones for communication with different components of their organization to compartmentalize activity and limit law enforcement detection.
- Drug traffickers and money launderers will often utilize written or electronic ledgers to keep track of the money collected and the money owed to the sources of supply.

14. Here, the government did not sufficiently disclose the bases and reasons for Special Agent Stout's proffered opinions. In fact, it did not even attempt to do so, outside of generally referencing his training and experience. *See, e.g., United States v. Mrabet*, 703 F. Supp. 3d 442, 444 (S.D.N.Y. 2023) (generalized reference to training, education, and experience for law enforcement expert who testified regarding drug trade not only failed to constitute sufficient disclosure of "bases and reasons" but was "patent evasion" of Rule 16's requirements); *United States v. Holland*, 223 Fed. Appx. 891, 893 (11th Cir. 2007) (generalized reference to training and experience for ATF agent-expert testifying as to interstate nexus of firearms was insufficient); *United States v. Durante*, 2012 WL 503657, *2-3 (D.N.J. 2012) (describing the bases and reasons for an expert's opinions as based on the expert's "training and experience and a review of records provided to him" was insufficient); *Biafora v. O'Malley*, 2024 WL 1327358. *6 (W.D. Wis. 2024) (a generic reference to "training and experience" is not adequate to justify every assertion that a vocational expert might make); *Erickson v. Baxter Healthcare Inc.*, 131 F. Supp. 2d 995, 999 (N.D. Ill. 2001) (Bucklo, J.) (general references to "experience" is not sufficient to demonstrate that specific opinions are reliable).

15. There is no question that DEA Group Supervisor Troey Stout has a significant amount of training and experience. The government's disclosure summarizes that experience, followed by a separate section generally listing the opinions and topic areas on which Mr. Stout may opine. There is no specific attempt to connect the general experience to any of the opinions, let alone provide a sufficient disclosure as to their bases and reasons. This disclosure thus constitutes a

6

classic example of providing nothing more than the "ipse dixit" of the expert as the bases for the opinion, which has long been considered insufficient, even before Rule 16's recent amendments. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also Riegel v. Medtronic, Inc.*, 451 F.3d 104, 127 (2d Cir. 2006) ("[a]n expert opinion requires some explanation as to how the expert came to his conclusion and what methodologies or evidence substantiate that conclusion").

### ii. Unspecified DEA Chemist

16. The government "disclosed" a second, unspecified expert—a prospective "DEA Chemist" from the DEA North Central Lab. Rule 16 is clear as to the mandatory contents of an expert disclosure. Subsection (a)(1)(G)(iii) is titled "Contents of Disclosure," and it contains a bullet-pointed list of disclosures any expert notice **must contain**:

- a complete statement of all opinions that the government will elicit from the witness in its case-in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed under (b)(1)(C);
- the bases and reasons for them;
- the witness's qualifications, including a list of all publications authored in the previous 10 years; and
- a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.

17. Even so, the government did not attempt to provide a timely, conforming disclosure. Instead, the entire sum and substance of its "notice" included the following:

> The Government is seeking to have certain items seized on April 14, 2021, to be tested at the DEA North Central Lab to determine if they are controlled substances. The lab has indicated that the testing should be completed before the end of the month. As soon as the test results are received, they will be forwarded to defense counsel. If the evidence is to be used, the government will provide Rule 16 information regarding the chemist, the testing procedures, the test results, and the anticipated expert testimony.

18. The date for the government's expert notice and disclosures was set by court order for April 14, 2025. After seeking and receiving a one-day extension, the government filed its disclosure on April 15, 2025. That was the deadline for providing all information required by Rule 16. Here, the government did not provide *any* opinions, let alone "a complete statement of all

7

opinions"; nor did it provide any bases and reasons, the witness's qualifications (or even the witness's name), all publications authored in the last ten years, or the required list of cases in which the witness has previously testified as an expert. Suffice to say, the government's disclosure did not comply with *any* of Rule 16's content requirements.

19. It is inappropriate for the government to disregard court ordered deadlines and not provide required materials—materials necessary to ensuring a fair trial—in a timely fashion.[1] The Court should therefore preclude the government from calling any potential DEA Chemist expert based upon the government's noncompliance with all of Rule 16's disclosure requirements. *See, e.g., United States v. Saiz*, 656 Fed. Appx. 300, 302 (9th Cir. 2016) (quoting *United States v. W.R. Grace*, 526 F.3d 499, 516 (9th Cir. 2008) (en banc) ("the government would violate [Fed. R. Civ. P. 16] if it were to call expert witnesses who were not timely disclosed. Therefore, the district court may properly rely on its Rule 16 authority where appropriate to enforce its orders.... [T]he district court may exclude evidence as a sanction").

### iii. Unspecified Dual Capacity Case Agents

---

[1] Counsel is also concerned about the fact that the government has taken a similar approach with respect to other discoverable items under Rule 16. On April 16, 2025, for example, the government sought and received a search warrant for various electronic devices seized from Mr. Von Garrett over four years prior on the date of his arrest. On Friday, April 18, 2025, the government informed counsel it may be producing new materials and exhibits "up to and including the eve of trial." It also disclosed that there was at least one potential video recording via DEA Airwing of one of the at-issue money transactions that was not previously disclosed, as well as recordings created by undercover and/or surveillance agents during the transactions. This is material that should have been produced to the defense a long time prior. The government did indicate it would not have an objection to the defense seeking a continuance; however, if it is unprepared and unable to comply with court ordered discovery and disclosure deadlines, it needs to seek a continuance, and provide an appropriate justification under the Speedy Trial Act for doing so. Otherwise, it is improper to overwhelm the defense in new disclosures on the eve of trial and force Mr. Von Garrett to choose between having his constitutionally afforded speedy trial, and having sufficient time to review expert disclosures, exhibits, and discovery. The appropriate remedy is thus to bar the government from introducing any untimely exhibits, etc. and proceed with the trial as scheduled.

20.     Most concerning here is the government's wholly insufficient "notice" as to unspecified law enforcement offers who may testify in a dual capacity, as both fact witnesses from their work on the instant investigation, and in the capacity of a law enforcement expert.

21.     The sum and substance of the government's disclosure for this inchoate category of potential experts was as follows:

> The other law enforcement officers involved in the case may also offer opinions on the method of operation of drug traffickers. All of their expert testimony will be based on their training and experience as law enforcement officers and/or involvement in this case.

22.     For the same reasons outlined above, this disclosure satisfies *none* of Rule 16's mandatory requirements. Here, the government did not provide *any* opinions, let alone "a complete statement of all opinions"; nor did it provide any bases and reasons, the witness's qualifications (or even the witness's name), all publications authored in the last ten years, or the required list of cases in which the witness has previously testified as an expert.

23.     The government's failure to provide a sufficient disclosure is especially problematic because of the complexity of such experts, and the high risk for juror confusion as they "switch hats" throughout the course of a single examination. Reviewing courts have mandated that district court judges take "precautions to avoid admitting this sort of confusing dual-role testimony." *United States v. Jett*, 908 F.3d 252, 268 (7th Cir. 2019). For this reason, in addition to requiring multiple cautionary instructions for such experts during the course of trial, the Seventh Circuit has recently counseled that such dual-capacity witnesses should provide their lay testimony first, and expert testimony separately. It specifically counseled:

> When the expert portion of the case agent's testimony begins, the district judge should allow the government to lay its foundation and establish the agent's qualifications. After it does, the district judge should instruct the jury that the testimony it is about to hear is the witness's opinion based on training and experience, not firsthand knowledge, and that it is for the jury to determine how much weight, if any, to give that opinion.

9

24. In this context, the Second Circuit has recognized that when a fact witness or case agent is also permitted to testify as an expert, there is a concern regarding "the aura of special reliability and trustworthiness surrounding expert testimony, which ought to caution its use." *United States v. Dukagjini*, 326 F.3d 45, 53 (2d Cir. 2003) (internal citations omitted). This aura is prejudicial because "the jury may infer that the agent's opinion about the criminal nature of the defendant's activity is based on knowledge of the defendant beyond the evidence at trial, a risk that increases when the witness has supervised the case." *Id.* Such testimony may also bolster the factual testimony by creating the impression that the law enforcement specialist believes "the government to be credible and the defendant to be guilty, suggestions we have previously condemned." *Id.* It can also inhibit cross-examination, increase the likelihood the expert testimony will stray from applying reliable methodology, and raise Rule 403 concerns by creating juror confusion. *Id.* at 43-44. These concerns are all generally shared by circuit courts across the country. *See, e.g., United States v. Haines*, 803 F.3d 713, 731 (5th Cir. 2015); *United States v. Freeman*, 498 F.3d 893, 902-03 (9th Cir. 2007); *United States v. Garcia*, 752 F.3d 382, 391 (4th Cir. 2014).

25. Thus, any ostensible law enforcement officer involved in this case, *a fortiori*, should be precluded from testifying as an expert witness.

### C. The Unspecified DEA Chemist Should Also be Barred on Relevance and Rule 403 Grounds.

26. Beyond the government's noncompliance with Rule 16 and the Court's pretrial disclosure order, the unspecified DEA Chemist should also be precluded from testifying pursuant to Fed. R. Evid. 401 and 403.

27. As the Supreme Court noted in *Daubert*, the Rule 403 balancing test is tilted further towards exclusion for expert testimony than it is for lay witness testimony because "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. *Daubert*, 509 U.S. at 598.

28.     The drugs at issue in this chemist's analysis are not at all relevant to the money laundering charges in this case—they are user quantity amounts (or close thereto) that are not charges and for which counsel believes no argument (or at least credible one) can be or will be made that they were or related to the source of the proceeds actually at issue.

29.     According to discovery tendered to date, an alleged money drop occurred on April 14, 2021. This transaction was allegedly arranged between codefendant Luis Hernandez and an undercover agent on April 13, 2021. The next morning, law enforcement conducted surveillance on an address associated with Mr. Von Garrett. That morning Damien Davis—a close acquaintance of Mr. Von Garrett's—are observed at the property, and Mr. Von Garrett is alleged to have loaded the bag containing the bulk United States currency into Davis's vehicle. The money drop off is then completed between Davis and Tobiyyah Ben Israel a few minutes later, with Mr. Von Garrett allegedly located in his vehicle in and around the vicinity. Mr. Von Garrett and Davis then meet up in a nearby parking lot after the transaction, and a short time later still, law enforcement ends surveillance and arrests the allegedly involved individuals.

30.     Among other items, the Bridgeton Police Department sergeant who conducted the traffic stop of Mr. Von Garrett's vehicle was reported to have recovered three packages of marijuana weighing approximately three quarters of a pound in total.

31.     Mr. Davis was arrested separately. A search of his vehicle reportedly revealed 78 grams of marijuana, 45 grams of heroin, and a scale containing white powder residue. A lab reported tendered in April 2025 indicated the 45 gram substance tested negative for heroin.

32.     Relevant evidence is defined as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. Irrelevant evidence is not admissible. Fed. R. Evid. 402.

33. Any evidence or testimony concerning the marijuana allegedly recovered from Mr. Von Garrett, or the contraband recovered from Mr. Davis, upon their respective arrests, should be excluded at trial in the first instance on the grounds of relevance.

34. Three quarters of a pound of marijuana is significant, but not outside reasonable boundaries for personal consumption. The fact remains, nonetheless, that it has nothing to do with the alleged money laundering conspiracy. No matter how skilled one is in illicit trades, the sale of such relatively trivial quantities of marijuana does not add up to weekly six figure money drops. Nor did the investigation gather any evidence (at least none produced in discovery to date) that Mr. Von Garrett was involved in the sale of narcotics, and nor are there any charges brought under the Controlled Substances Act in this indictment. The same is true with respect to the contraband found on Mr. Davis. Again, while 45 grams of heroin is not insignificant, there is no actual nexus between his contraband and the proceeds at issue in this money laundering trial, and of course, he is a separate individual. And perhaps most importantly, this substance tested negative for heroin.

35. Despite lacking relevance, this evidence would inject unfair prejudice into the trial. The primary concern is that the jury would use this evidence for improper character and propensity reasons. Namely, there is a risk that it would unfairly judge Mr. Von Garrett as a petty drug dealer or user, and/or one who associates with such individuals, and assume he is the type of person or otherwise more inclined to engage in the charged conduct after receiving this evidence.

36. Rule 403 of the Federal Rules of Evidence permits the exclusion of evidence when its probative value is substantially outweighed by the danger of unfair prejudice, issue confusion, and misleading the jury. The reliance upon expert testimony to present such evidence gives it an additional aura or veneer of credibility and relevance, and thus the balance tilts further in favor of exclusion. For the reason articulated above, all these concerns are present here. Whatever minimal

if any probative value this evidence has is substantially outweighed by the concerns of prejudice, and thus, the government should be precluded from introducing this evidence at trial.

### III.     Conclusion

37.     Based on the foregoing, Mr. Von Garrett, through counsel, respectfully requests that the Court grant his motion *in limine* and enter an order precluding the government from presenting expert opinion testimony at trial.

Respectfully submitted,

/s/ Christopher T. Grohman
**Christopher T. Grohman**

/s/Ryan J. Levitt
**Ryan J. Levitt,**
Attorneys for Defendant.

Christopher T. Grohman
Ryan J. Levitt
**Benesch, Friedlander, Coplan, & Aronoff LLP**
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
312.212.4943
cgrohman@beneschlaw.com
rlevitt@beneschlaw.com